UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN N. GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>MARION SPEARMAN, Warden,<br><br>Respondent. | Case No. 12-cv-00124-JST (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner currently incarcerated at the Correctional Training Facility in Soledad, California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a prison disciplinary hearing at Ironwood State Prison ("ISP") that resulted in the forfeiture of good time credits. Finding the petition stated cognizable claims under § 2254, the Court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer, and petitioner filed a traverse.[1]

## BACKGROUND

Petitioner is serving a sentence of 40 years to life in prison on a murder conviction. His habeas petition does not challenge that conviction, but instead challenges a 2010 prison disciplinary decision that resulted in the loss of time credits. The petition and attachments thereto provide the following information:

On November 18, 2009, a team performed a sweep of ISP's building C5, where petitioner

---

[1] Petitioner initially named Timothy Busby, former warden of ISP, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Marion Spearman, the current warden of the Correctional Training Facility, where petitioner is currently incarcerated, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

was housed. (Petition at 6.[2]) The sweep was led by Sergeant Hernandez, Lieutenant S. Gonzalez, and Captain M. Pollard. Correctional Officer Fontaine searched petitioner's cell and found a cell phone. (Id.) The cell phone was confiscated, and two days later, a CDC-115 rules violation report ("CDC-115") was issued that charged petitioner with violating 15 CCR § 3006(c), a serious Division "F" offense.[3] (Id. at 6, 33-36.)

A hearing was held on the CDC-115 on November 25, 2009. (Id.) The Senior Hearing Officer ("SHO") was the same Lieutenant S. Gonzalez who was part of the team that led the November 18, 2009 sweep of building C5. (Id.) Petitioner took responsibility for the contraband but disputed the classification of the incident as a Division F serious offense. (Id.) He argued that the cell phone was inoperable, had no service, and was missing accessories. (Id.) Petitioner was found guilty. (Id. at 7, 34-35.) Captain M. Pollard, who also led the November 18, 2009 sweep, served as the Reviewing Officer and, on November 30, 2009, signed off on the CDC-115 form. (Id. at 33.) On December 4, 2009, Chief Disciplinary Officer V. Wells, confirmed the finding of guilt and disposition of the CDC-115. (Id.) Petitioner filed an inmate appeal; his appeal was partially granted at the director's level. (Id. at 20-21.) The appeal reviewer found that petitioner's right to an impartial decision-maker was violated because SHO Lieutenant S. Gonzalez had witnessed the confiscation of the cell phone. (Id.)[4] The inmate appeal decision required prison

---

[2] The page numbers used herein for this document refer to those affixed to the top of the page by the Court's electronic filing program.

[3] The version of section 3006(c)(19) of Title 15 of the California Code of Regulations in effect at the time of the cell search and hearing provided in part: "[I]nmates shall not possess or have under their control … [c]ellular telephone or other electronic communications device[s]." 15 CCR § 2006(c)(9) (2009).

[4] Section 3320(h) of Title 15 of the California Code of Regulations provides: "Staff who observed, reported, classified, supplied supplemental reports to, or investigated the alleged rule violation; who assisted the inmate in preparing for the hearing; or for any other reason have a predetermined belief of the inmate's guilt or innocence shall not hear the charges or be present during deliberations to determine guilt or innocence and disposition of the charges."

officials to re-issue the CDC-115 and hold a new hearing. (Id.)

A new CDC-115 for the same offense was issued on June 4, 2010. (Id. at 7, 51-55.) Petitioner requested an investigative employee to assist him in proving the cell phone was inoperable. (Id.) The request for an investigative employee was denied on the ground that petitioner did not meet the criteria for an investigative employee. (Id. at 52-53.)[5] A new hearing was held on June 11, 2010, at which Lieutenant D. Comeaux was the Senior Hearing Officer. (Id. at 53-54.) Petitioner again took responsibility for the phone and again objected to the classification of the offense as a Division F serious offense. (Id. at 7, 53-55.) He again argued that the phone "was useless and harmless" and that the offense should be classified as only an administrative offense. (Id.) Petitioner was found guilty of a Division F serious offense, and assessed a 30-day time credit forfeiture. (Id. at 54.) Captain M. Pollard again served as the Reviewing Officer and, on June 14, 2010, signed off on the CDC-115 form. (Id. at 51.) On June 17, 2010, Chief Disciplinary Officer, A. Scott Barron, confirmed the finding of guilt and disposition of the CDC-115. (Id.)

Petitioner filed unsuccessful inmate appeals about the disciplinary decision. (See Petition at 39-50.) Petitioner also filed unsuccessful state court habeas petitions challenging the disciplinary decision. (See Answer at Exs. 1-6.)

Petitioner filed the instant federal petition on December 14, 2011. The Court reviewed the petition, dismissed two claims, and ordered respondent to file an answer showing cause why the petition should not be granted on the claims that: (1) the denial of petitioner's request for an investigative employee violated his right to due process and his right to present evidence in

---

[5] Section 3315(d)(1)(A) of Title 15 of the California Code of Regulations mandates assigning an investigative employee to assist an inmate with a disciplinary hearing where: "(1) The complexity of the issues require further investigation; (2) The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense; and (3) A determination has been made that additional information is necessary for a fair hearing."

3

mitigation of the charge; and (2) petitioner's right to an impartial decision-maker was violated because Captain M. Pollard was not an impartial reviewer.

## DISCUSSION

A.  Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Federal habeas corpus jurisdiction exists when a prisoner seeks "expungement of a

4

disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989). The Ninth Circuit has interpreted "likely" to mean "*could* potentially affect the duration of [the prisoner's] confinement." Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (emphasis in original); cf. Edwards v. Balisok, 520 U.S. 641, 643-44 (1997) ("the sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus").

B.  Due Process Rights In Prison Disciplinary Proceedings

Due process requires five procedural protections in connection with prison disciplinary proceedings that may result in the forfeiture of time credits. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A prisoner's right to due

process is violated "only if he [is] not provided with process sufficient to meet the Wolff standard." Id.

The record reveals, and petitioner does not dispute, that: (1) he received written notice of the charges; (2) well over 24 hours prior to the hearing; (3) there was a written statement as to the findings and reasoning of the disciplinary decision; and (4) he had an opportunity call witnesses and present documentary evidence in his defense. Therefore, the first four procedural protections of Wolff were satisfied in petitioner's case. See Wolff, 418 U.S. at 564.

C.   Petitioner's Claims[6]

1.   Right to Investigative Employee

Petitioner claims that the denial of his request for an investigative employee ("IE") deprived him of due process and hampered his ability to present mitigation evidence. Under Wolff, whether an IE should be appointed depends on whether "an illiterate inmate is involved . . . or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." 418 U.S. at 570. There is no indication or allegation that petitioner was illiterate, and the record, as well as petitioner's filings in the instant case, show that petitioner is very much literate. Further, the issue at the hearing was exceedingly simple: whether petitioner had a cell phone. The record clearly indicates petitioner understood the charges because he took "full responsibility of the contraband." (Petition at 55.)

Petitioner claims nonetheless that an IE was necessary to inspect the cell phone and prepare a report for the SHO explaining that the cell phone was inoperable. (Petition at 10-11.) Petitioner also claims that an IE could have obtained photographs of the cell phone for use at the

---

[6] The parties dispute whether petitioner exhausted state court remedies for his claims. The Court chooses to reach the merits and deny the petition, notwithstanding any failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2); see also Henry v. Ryan, No. 09-99007, slip op. at 9 (9th Cir. June 19, 2013) (declining to reach the procedural default issue about which the parties disagreed, and instead exercising "discretion to deny the claim on the merits as permitted by 28 U.S.C. § 2254(b)(2).")

6

disciplinary hearing. (Id.)

Petitioner argues that possession of an inoperable cell phone does not meet the criteria for a serious offense, and therefore, that evidence showing "that the contraband found was harmless to the facility's security . . . would have reduced the offense from Serious Offense, Division F to Administrative Offense." (Id. at 11.) Petitioner relies on 15 CCR § 3315(a)(2) and 15 CCR § 3314(a)(2). (Id.) 15 CCR § 3315(a)(2) states in part: "Inmate misconduct reported on a CDC Form 115 shall be classified serious if: [i]t involves any one or more of the following circumstances . . . (B) A breach of or hazard to facility security." 15 CCR § 3314(a)(2) states in part: "Inmate misconduct reported on a CDC Form 115 shall be classified administrative if: [i]t does not involve any of the following circumstances . . . (B) A breach of or hazard to facility security."

Petitioner has failed to demonstrate that he was unable to present, on his own, information about the cell phone's operability. Indeed, the record shows that petitioner's defense was presented at the hearing. Specifically, petitioner prepared a written statement for the hearing, which included the following:

> [Petitioner] found in the day-room a phone that he believes belongs to the staff (since they are the only ones who can bring such things into prison grounds) and took it. He checked the phone and it was/is totally useless and harmless. The phone had no line service; accessories that allow its functioning were/are missing; the phone's battery doesn't work due [to] the low/non charge; in essence, the phone is totally work-less [sic]/functionless and therefore, harmless.
> …
>
> (a) the phone has no line-service, in other words, is not and was never [] in service or able to operate/function (at least since [petitioner] found it) due to the lack of missing accessories;
>
> (b) the phone has missing accessories that not allows [sic] its functioning;
>
> (c) charge of the phone is death or close to death and [no] device that allows its charge is/was found or existed.
>
> For the reasons stated above, and in awaiting that an Investigator Employee be assigned to review the evidence, [petitioner] contends that the offense is and must be reduced to an

7

> Administrative Offense pursuant [to] § 3314, due [to] the element of "a breach of or hazard to facility security" was not met.

(Petition at 55.)

Petitioner also fails to demonstrate that the information he would have purportedly obtained through an IE would have been relevant to the disciplinary proceedings. For instance, petitioner fails to demonstrate how photographs of the cell phone – which he claims an IE could have helped him collect – would have established its inoperability. Moreover, as discussed above, petitioner's inoperability defense was presented at the disciplinary hearing. The problem for petitioner was that the operability of the telephone did not affect the charges. Although petitioner claims the inoperability of the cell phone made the offense an administrative offense, the SHO found "Possession of a Cellular Telephone" to be a "Serious Division F Offense" regardless of operability. (Petition at 54.) The second level appeal reviewer agreed, holding that "possessing a cellular phone is a threat to the safety and security of the institution and it is properly classified as a Serious Rules Violation." (Id. at 47.) These findings were upheld at the director's level. (Id. at 39-40.) It cannot be said that the serious offense classification is objectively unreasonable. Whether or not the cell phone was inoperable on the day it was confiscated had little or no relevance to whether it worked for petitioner on an earlier date or whether it might operate in the future. Notably, petitioner fails to explain for what other purpose he took and kept the cell phone, besides the one most commonly associated with it – to communicate over a cellular telephone line.

Accordingly, based upon review of the underlying record, the Court concludes that the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

2. <u>Right to Impartial Decision-Maker</u>

Petitioner claims he was deprived of his right to an impartial decision-maker because Captain M. Pollard served as Reviewer of the CDC-115. (Petition at 12.) Petitioner does not appear to base this argument on the ground that Captain M. Pollard was one of the people leading

8

the November 18, 2009 sweep. Rather, petitioner argues that Captain M. Pollard was not impartial because he was the same Reviewer over the first CDC-115 hearing, conducted on November 25, 2009, and consequently he had already once before "affirmed the finding of guilt" against petitioner on the contraband charges. (Petition at 13.) Regardless of the basis of Captain M. Pollard's purported lack of impartiality, the claim fails.

Wolff did not address the requirement of an impartial decision-maker. Petitioner has not identified, nor is the Court aware of, any other Supreme Court case holding that due process requires an unbiased decision-maker for a prison disciplinary proceeding. Given the absence of such a holding, petitioner cannot show that the state court's rejection of his biased decision-maker claim was contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court. As a result, § 2254(d) bars habeas relief for him.

The Supreme Court has observed that a "'fair trial in a fair tribunal is a basic requirement of due process.' . . . This applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); see also Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (due process requires neutral and detached decision-maker for parole revocation hearing). Even assuming arguendo that this procedural protection necessary for administrative decisions applies to a prison disciplinary proceeding, petitioner's claim would fail for lack of evidence that Captain M. Pollard made any adjudication of petitioner's guilt. As explained by the first level appeal reviewer, "Captain Pollard's position in the process was that of a reviewer to ensure your due process was not violated." (Petition at 50.) As further explained by the second level appeal reviewer, "Captain Pollard did not hear the charges nor was he present during deliberations to determine [petitioner's] guilt or innocence and disposition of the charges." (Id. at 47.) These findings were upheld at the director's level. (Id. at 39-40.) Petitioner has not identified, nor is the Court aware of, any authority showing that the role of the Reviewer in California's CDC-115 process is to make a determination of guilt or innocence or to review a

finding of guilt or innocence. Consequently, contrary to petitioner's belief, the evidence is that Captain M. Pollard's role was not to decide the charges or review the decision-making but rather to ensure that petitioner received procedural protections.

Accordingly, based upon review of the underlying record, the Court concludes that the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

D.  Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. Id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

/ / /

/ / /

Additionally, the Clerk is directed to substitute Marion Spearman on the docket as the respondent in this action.

**IT IS SO ORDERED**.

Dated: September 29, 2013

_____
JON S. TIGAR
United States District Judge

11